**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| EDWARD JAMES MARTIN O'BRIEN,  ) | |
| ) | |
| Plaintiff,  ) | |
| v.  ) | No. 1:20-cv-00153-SEP |
| ) | |
| STEPHEN MURPHY, et al.,  ) | |
| ) | |
| Defendants.  ) | |

**MEMORANDUM AND ORDER**

    This matter comes before the Court on review of self-represented Plaintiff Edward James Martin O'Brien's Amended Complaint, Doc. [8], pursuant to 28 U.S.C. § 1915. For the reasons below, the Court will dismiss the official capacity claims against all Defendants, as well as the individual capacity claim against Stephen Murphy. The Court will direct the Clerk of Court to issue process on Defendant Adam Robinette in his individual capacity as to Plaintiff's claim of excessive force after being handcuffed and on Defendant Charlie Mays in his individual capacity as to Plaintiff's claim of deliberate indifference to his medical needs.

**Legal Standard**

    Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, Plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the Court to draw upon judicial experience and common sense. *Id.* at 679. The Court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016); *see also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that the court must accept factual allegations in

complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means "that if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, pro se complaints are still required to allege sufficient facts to state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); s*ee also Stone*, 364 F.3d at 914-15 (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that the court must excuse a plaintiff's procedural mistakes. *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *see also Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 914 (8th Cir. 2002) ("All civil litigants are required to follow applicable procedural rules."); *Lindstedt v. City of Granby*, 238 F.3d 933, 937 (8th Cir. 2000) (per curiam) ("A pro se litigant is bound by the litigation rules as is a lawyer . . . .").

## Background

Plaintiff is a self-represented litigant who is currently incarcerated at the Eastern Reception, Diagnostic and Correctional Center in Bonne Terre, Missouri. On July 14, 2020, he filed a civil action pursuant to 42 U.S.C. § 1983. Doc. [1]. Along with his Complaint, he filed a motion for leave to proceed in forma pauperis and a motion for appointment of counsel. Docs. [2], [3]. On October 23, 2020, the Court granted Plaintiff permission to proceed in forma pauperis, assessed an initial partial filing fee, and declined to appoint him counsel. Doc. [7].

Plaintiff's original Complaint was subject to dismissal under 28 U.S.C. § 1915 because Plaintiff sued Defendants in their official capacities only, but he failed to provide any factual allegations showing the liability of Defendant's employer, Ripley County. Rather than dismissing the case outright, the Court provided Plaintiff the opportunity to file an amended complaint, which he did on November 9, 2020. Doc. [8].

## The Amended Complaint[1]

In the Amended Complaint, Plaintiff names Deputy Adam Robinette, Chief Deputy Charlie Mays, and Deputy Stephen Murphy as Defendants, and he sues them in both their official and individual capacities. Doc. [8] at 2-4. All are employed by the Ripley County Sheriff's Department.

Plaintiff alleged that, on March 22, 2020, he "was being pursued by Deputy Adam Robinette" on Highway 160E-12 outside of Doniphan, Missouri. *Id.* at 4. During the vehicle pursuit, Deputy Robinette allegedly used his "front right fender to hit the vehicle [Plaintiff] was driving," in a tactic known as a "PIT maneuver,"[2] forcing Plaintiff into a ditch. *Id.* Plaintiff then "placed both [his] hands out of the window" and was handcuffed and placed face down on the ground by Deputy Murphy. *Id.* Plaintiff alleges that Deputy Robinette then came over and punched him in the face three times and tasered him twice, all while he was face down in handcuffs. *Id.* He claims that Deputy Robinette lied when he stated that Plaintiff had "ram[med]" Robinette's vehicle. Similarly, Plaintiff claims that Deputy Stephen Murphy "lie[d]" when he said Plaintiff had "rammed" Robinette's car. *Id.* Because their alleged lies are the basis for Plaintiff's second-degree felony assault charge, Plaintiff contends that they amount to libel and slander. *Id.* at 5

When an EMT arrived on scene, Plaintiff requested medical attention for his alleged injuries from the car accident and assault. *Id.* Plaintiff claims he had been knocked unconscious in the crash and that he had a black eye from being punched. Plaintiff contends that Chief Deputy Mays told the EMT that Plaintiff "was fine and did not need medical attention," and, as a result, Plaintiff did not receive medical attention for his alleged injuries. *Id.* Plaintiff also accuses Chief Deputy Mays of libel and slander, contending that he "lie[d]" when stating that Plaintiff had used his "front left bumper [and] fender to ram Deputy Robinette's vehicle." *Id.* Plaintiff further contends that Mays used this "lie" as a basis to order the PIT maneuver.

In addition to individual capacity claims, Plaintiff also bring official capacity claims against all three Defendants, which Plaintiff notes are actually charges against Defendants'

---

[1] The facts here are taken from the allegations set out in Plaintiff's Amended Complaint. Doc. [8]. The Court assumes their truth for purposes of its analysis. *Jones v. Douglas Cnty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019).

[2] PIT is an acronym for "Precision Immobilization Technique." *See Scott v. Harris*, 550 U.S. 372, 375 (2007).

3

employer, Ripley County. He asserts that the Ripley County Sheriff's Department Facebook page, as well as the front page of a newspaper, stated that he had "assaulted Deputy Robinette," which influenced public opinion before his upcoming trial.[3] According to Plaintiff, that was libel and slander.

Plaintiff alleges that, as a result of this incident, he suffered a period of unconsciousness and a black eye, and that he continues to suffer from back and neck problems and migraines. He also states that he has become depressed "because [he's] facing 30 years on charges [he's] not good for." *Id.* Plaintiff is seeking the following relief: $3 million for being punched in the face, $4 million for being tasered, $5 million for being struck by Deputy Robinette's vehicle, $10 million for being denied medical care, $5 million for being "slandered" on Facebook and in the newspaper, and $5 million in pain and suffering from his unattended injuries. Doc. [8] at 6. In total, Plaintiff seeks $32 million and the firing of Deputy Robinette.

## Discussion

Plaintiff, a self-represented litigant, brings this civil action pursuant to 42 U.S.C. § 1983. His Amended Complaint names Ripley County Sheriff's Deputy Robinette, Chief Deputy Mays, and Deputy Murphy as Defendants. As outlined below, the Court will dismiss the official capacity claims against all Defendants and the individual capacity claim against Stephen Murphy. The Court will direct the Clerk of Court to issue process on Adam Robinette in his individual capacity as to Plaintiff's claim of excessive force after being handcuffed, and on Charlie Mays in his individual capacity as to Plaintiff's claim of deliberate indifference to his medical needs.

### A. Official Capacity Claims

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). A "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999); *see also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of*

---

[3] Plaintiff's criminal case is *State of Missouri v. O'Brien*, No. 20RI-CR00190-01 (36th Jud. Cir., Ripley County). He is charged with second-degree felony assault, felony resisting arrest, and operating a motor vehicle in a careless and imprudent manner. The case is still pending.

*Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer").  Deputy Robinette, Chief Deputy Mays, and Deputy Murphy are all allegedly employed by the Ripley County Sheriff's Department.  As such, the claims against them in their official capacities are claims against Ripley County itself.

       A local governing body such as Ripley County can be sued under 42 U.S.C. § 1983.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).  In order to prevail on such a claim, Plaintiff must establish the governmental entity's liability for the alleged conduct.  *Kelly*, 813 F.3d at 1075.  Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018); *see also Marsh v. Phelps Cnty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").  Thus, there are three possible ways for Plaintiff to assert liability against Ripley County.

       First, Plaintiff could show the existence of an unconstitutional policy.  "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."  *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016); *see also Russell v. Hennepin Cnty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible . . . for establishing final policy with respect to the subject matter in question.").  For a policy that is unconstitutional on its face, a plaintiff needs no evidence other than a statement of the policy and its exercise.  *Szabla v. City of Brooklyn,* 486 F.3d 385, 389 (8th Cir. 2007) (citing *City of Oklahoma City v Tuttle*, 471 U.S. 808, 822-23 (1985)).  However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390.  "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cnty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, Plaintiff could establish a claim of liability based on an unconstitutional "custom." Plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, Plaintiff could assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. To do so, Plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cnty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not have to plead specifically the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). But he must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Plaintiff claims that Ripley County posted news about his case on the Ripley County Sheriff's Department Facebook page, which he asserts constitutes libel and slander. Libel and slander are not actionable under 42 U.S.C. § 1983. *See Smith v. Iverson*, 8:19CV298, 2019 WL 4417548, at *11 (D. Neb. 2019) (stating that "[a] § 1983 action cannot be predicated upon the theory of slander, defamation, or libel"). Nevertheless, even if they were, Plaintiff's allegations still would not support the proposition that his rights were violated due to an unconstitutional policy, custom, or failure to train on the part of Ripley County.

First, Plaintiff has not established that Ripley County had an unconstitutional policy. Specifically, his facts do not point to any "policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Johnson*, 725 F.3d at 828 (quoting *Monell*, 436 U.S. at 690). In other words, Plaintiff has not demonstrated that his alleged injury was the result of any deliberate choices made by Ripley County policymaking officials. Rather, his Amended Complaint describes a single incident of alleged police misconduct, which is not sufficient to impute liability to Ripley County. *See Ulrich v. Pope*

6

*Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) ("Generally, an isolated incident of alleged police misconduct . . . cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983.").

Second, Plaintiff has not shown that his rights were violated due to an unconstitutional custom, in that he has not demonstrated the existence of a "continuing, widespread, persistent pattern of unconstitutional misconduct" by Ripley County employees, much less that policymaking officials were deliberately indifferent to or tacitly authorized such misconduct. *Johnson*, 725 F.3d at 828.  Plaintiff's allegations relate to a single incident and do not describe any kind of pattern whatsoever.  *See Wedemeier v. City of Ballwin*, 931 F.2d 24, 26 (8th Cir. 1991) (stating that a court cannot infer the existence of an unconstitutional policy or custom from a single occurrence).

Finally, for the same reasons, Plaintiff has failed to properly allege that Ripley County violated his constitutional rights by failing to train or supervise its employees.  In particular, he has not alleged a "pattern of similar constitutional violations by untrained employees."  *Lincoln Cnty.*, 874 F.3d at 585.

Instead of establishing a policy, custom, or failure to train, Plaintiff notes that Deputy Robinette, Chief Deputy Mays, and Deputy Murphy "are all employees of Ripley County."  Doc. [8] at 5.  To the extent that he is alleging respondeat superior liability, his claim fails as a matter of law.  Ripley County cannot be held liable simply because it employs a tortfeasor.  *See A.H. v. City of St. Louis*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality . . . cannot be liable on a respondeat superior theory.").

Because the Amended Complaint does not demonstrate that Plaintiff's constitutional rights were violated pursuant to an unconstitutional policy, custom, or failure to train, it fails to state a municipal liability claim against Ripley County.  Accordingly, Plaintiff's official capacity claims against Deputy Robinette, Chief Deputy Mays, and Deputy Murphy will be dismissed.

### B. Deputy Murphy

Plaintiff accuses Deputy Murphy of lying by saying that Plaintiff had "rammed Deputy Adam Robinette's vehicle," resulting in Plaintiff being charged with second-degree assault. Plaintiff contends that Deputy Murphy's actions constitute libel and slander.

As noted above, Plaintiff cannot pursue a claim for libel or slander under § 1983.  *See Paul v. Davis*, 424 U.S. 693, 711-12 (1976) (determining that regardless of seriousness of

"defamatory publications," the harm to plaintiff's reputation "did not deprive him of any liberty or property interests protected by the Due Process Clause"); *Ellingburg v. Lucas*, 518 F.2d 1196, 1197 (8th Cir. 1975) (stating that an inmate cannot recover damages for defamation under § 1983 "because a defamed person has not been deprived of any right, privilege or immunity secured to him by the Federal Constitution or laws of the United States"); *Smith*, 8:19CV298, 2019 WL 4417548, at *11 (stating that "[a] § 1983 action cannot be predicated upon the theory of slander, defamation, or libel").

### C. Deputy Robinette

Plaintiff accuses Deputy Robinette of excessive force in the use of the PIT maneuver, excessive force after he was handcuffed, and libel and slander for wrongfully charging him with second-degree assault.

#### i. PIT Maneuver as Excessive Force

Plaintiff alleges that Deputy Robinette's use of the PIT maneuver constituted use of excessive force[4] and police misconduct. He emphasizes that Deputy Robinette executed the PIT maneuver "prior to [being] given orders." Doc. [8] at 4. But whether Deputy Robinette had permission to perform the PIT maneuver is irrelevant to whether it violated Plaintiff's constitutional rights. *See Scott v. Harris*, 550 U.S. 372, 375 n.1 (2007) (in the context of a police pursuit in which the officer forced plaintiff's car off the road, it was "irrelevant to our analysis whether [the officer] had permission to take the precise actions he took").

Simply stating that Deputy Robinette employed the PIT maneuver is not enough to state a claim for excessive force. *See Moore-Jones v. Quick*, 909 F.3d 983, 986 (8th Cir. 2018) (stating that "PIT maneuvers can be reasonably used" depending on the circumstances). There has to be some indication that Deputy Robinette acted unreasonably in ordering it, but Plaintiff provides no such facts. Plaintiff does not indicate, for example, that Deputy Robinette was in an unmarked car, that he failed to employ lights and sirens, that he did not give Plaintiff an opportunity to stop, or that Plaintiff was complying with law enforcement commands. Plaintiff alleges only that he was fleeing from law enforcement in a vehicle, and that ultimately a PIT maneuver was used to force him to stop. That is insufficient to state a claim of excessive force.

---

[4] The Court notes that regardless of the outcome of Plaintiff's pending criminal case, Plaintiff's excessive force claims would not necessarily be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Colbert v. City of Monticello*, 775 F.3d 1006, 1008 (8th Cir. 2014) (noting that a finding of excessive force against defendant would not necessarily imply the invalidity of plaintiff's convictions).

8

### ii. Excessive Force After Being Handcuffed

"The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers." *Thompson v. City of Monticello*, 894 F.3d 993, 998 (8th Cir. 2018); s*ee also Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005) ("The right to be free from excessive force is included under the Fourth Amendment's prohibition against unreasonable seizures of the person."); *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) ("The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that 'arise[] in the context of an arrest or investigatory stop of a free citizen.'") (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)).  The violation of this right is sufficient to support an action under § 1983.  *Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003) ("The violation of [the] right [to be free from excessive force] will, of course, support a § 1983 action.").

Assessing whether force is excessive under the Fourth Amendment requires determining whether or not law enforcement officers' actions are "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Ellison v. Lesher*, 796 F.3d 910, 916 (8th Cir. 2015).  Factors that are relevant to the reasonableness of an officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Burnikel v. Fong*, 886 F.3d 706, 710 (8th Cir. 2018).  "However, not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Robinson v. Hawkins*, 937 F.3d 1128, 1135-36 (8th Cir. 2019).  Law enforcement officers undoubtedly have a right to use some degree of physical force, or threat of physical force, to effect a lawful seizure. *Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011).  "A de minimis use of force is insufficient to support a claim, and it may well be that most plaintiffs showing only de minimis injury can show only a corresponding de minims use of force." *Robinson*, 937 F.3d at 1136.

Plaintiff states that after his vehicle was forced into a ditch, he gave himself up and was placed in handcuffs and detained facedown.  Plaintiff alleges that while in this position, Deputy Robinette punched him three times in the face and tasered him twice.  Doc. [8] at 4.  The Court must accept these allegations as true.  *See Douglas Cnty. Sheriff's Dep't*, 915 F.3d at 499.  As such, Plaintiff has adequately stated an excessive force claim for purposes of initial review.  *See*

9

*Blazek v. City of Iowa City*, 761 F.3d 920, 925 (8th Cir. 2014) ("[W]hen a person is subdued and restrained with handcuffs, a 'gratuitous and completely unnecessary act of violence' is unreasonable and violates the Fourth Amendment") (quoting *Henderson v. Munn*, 439 F.3d 497, 50 (8th Cir. 2006)).  The Court will direct the Clerk of Court to issue process on Deputy Robinette in his individual capacity as to Plaintiff's claim of excessive force after he was handcuffed.

### iii.      Libel and Slander

Plaintiff claims that Deputy Robinette "lied and said [Plaintiff] used [his] front left bumper [and] fender to ram his vehicle," which was the basis of Plaintiff second-degree assault charge.  Doc. [8] at 5.  As noted above, libel and slander claims are not available under 42 U.S.C. § 1983.  *See Paul*, 424 U.S. at 711-12 (determining that regardless of seriousness of "defamatory publications," the harm to plaintiff's reputation "did not deprive him of any liberty or property interests protected by the Due Process Clause"); *Ellingburg*, 518 F.2d at 1197 (stating that an inmate cannot recover damages for defamation under § 1983 "because a defamed person has not been deprived of any right, privilege or immunity secured to him by the Federal Constitution or laws of the United States"); *Smith*, 8:19CV298, 2019 WL 4417548, at *11 (stating that "[a] § 1983 action cannot be predicated upon the theory of slander, defamation, or libel").  Therefore, Plaintiff has not stated a § 1983 claim on the basis of libel or slander against Deputy Robinette in his individual capacity.

### D. Chief Deputy Mays

According to Plaintiff, Chief Deputy Mays denied him medical treatment, libeled and slandered him, and wrongfully ordered the PIT maneuver.

### i.      Denial of Medical Care

Plaintiff's denial of medical care claim will be analyzed under the Fourteenth Amendment because Plaintiff was under arrest at the time of the alleged denial.  *See Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012) (analyzing claim of an arrestee under the Due Process Clause when the denial of medical care occurred after arrest and the plaintiff did not invoke the Fourth Amendment).  Medical claims arising under the Fourteenth Amendment are evaluated pursuant to the Eighth Amendment's deliberate indifference standard.  *See Grayson v. Ross*, 454 F.3d 802, 808 (8th Cir. 2006); *see also Morris v. Cradduck*, 954 F.3d 1055, 1058 (8th Cir. 2020)

10

(stating that a pretrial detainee has the same rights to medical care under the due process clause as an inmate has under the Eighth Amendment).

In order to establish deliberate indifference, a plaintiff must establish "(1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019) (quoting *Plemmons v. Roberts*, 439 F.3d 818, 823 (8th Cir. 2006)); *see also Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995).

Plaintiff's claim that he was denied medical treatment is sufficient for purposes of initial review. In particular, he states that he had serious medical needs resulting from the vehicle crash, being punched in the head, and being tasered. He further alleges that Chief Deputy Mays refused to allow him to be treated by an EMT on scene, despite requesting such treatment. Doc. [8] at 5. These allegations must be accepted as true, and, therefore, the Court will direct the Clerk of Court to issue process on Chief Deputy Mays as to Plaintiff's claim of deliberate indifference to medical needs.

### ii. Libel, Slander, and Excessive Force

As he claimed of Deputies Robinette and Murphy, Plaintiff also states that Chief Deputy Mays libeled and slandered him. Specifically, Plaintiff states that Chief Deputy Mays "lied" about Plaintiff using his "front left bumper [and] fender to ram Deputy Robinette's vehicle," and then used "that lie" to order the PIT maneuver against his vehicle. *Id.* Again, libel and slander are not actionable under 42 U.S.C. § 1983. *See Paul*, 424 U.S. at 711-12 (determining that regardless of seriousness of "defamatory publications," the harm to plaintiff's reputation "did not deprive him of any liberty or property interests protected by the Due Process Clause").

Plaintiff also alleges that Chief Deputy Mays wrongfully ordered the PIT maneuver, but Plaintiff fails to state a § 1983 claim based on excessive force, because he does not adduce any facts suggesting that the maneuver was unreasonable under the circumstances. *See Moore-Jones*, 909 F.3d at 986 (stating that "PIT maneuvers can be reasonably used" depending on the

11

circumstances).  Plaintiff's vague allegation that Chief Deputy Mays based this decision on "a lie" does not suffice.  For these reasons, Plaintiff has failed to state a § 1983 claim based on libel, slander, or excessive force against Chief Deputy Mays.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's official capacity claims against all Defendants are **DISMISSED** without prejudice for failure to state a claim.  *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that Plaintiff's individual capacity claim against Defendant Stephen Murphy is **DISMISSED** without prejudice for failure to state a claim.  *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that Plaintiff's individual capacity excessive force claims against Defendants Adam Robinette and Charlie Mays with regard to the use of the PIT maneuver are **DISMISSED** without prejudice for failure to state a claim.  *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that Plaintiff's individual capacity libel and slander claims against Defendants Adam Robinette and Charlie Mays are **DISMISSED** without prejudice for failure to state a claim.  *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue on Defendant Adam Robinette in his individual capacity as to Plaintiff's claim of excessive force while Plaintiff was handcuffed, and on Defendant Charlie Mays in his individual capacity as to Plaintiff's claim of deliberate indifference to medical needs.

**IT IS FINALLY ORDERED** that an appeal from this partial dismissal would not be taken in good faith.

An appropriate Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 22nd day of December, 2020.

*Sarah E. Pitlyk*
_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE