**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| EDWARD JAMES MARTIN O'BRIEN, | ) )  ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| STEPHEN MURPHY, et al., | ) ) ) |
| Defendants. | ) |

Case No. 1:20-cv-00153-SEP

## MEMORANDUM AND ORDER

Before the Court is Defendants Adam Robinett and Charlie Mays's Motion for Summary Judgment.  Doc. [40].  For the reasons stated below, the motion is granted.

### FACTUAL BACKGROUND[1]

On March 22, 2020, Plaintiff Edward James Martin O'Brien and his girlfriend were driving through Ripley County, Missouri on their way back from Arkansas.  Docs. [41] (Defs.' SUMF) ¶ 1; [49-1] (Defs.' Suppl. to O'Brien's Dep.) at 2:1-9.[2]  While passing through Ripley County, a Ripley County police officer activated his lights and sirens in attempt to pull over O'Brien's vehicle, as the vehicle was previously reported as stolen.  Docs. [41] ¶¶ 1, 6; [49-1] at 2:1-8.  O'Brien gave chase and was pursued by Defendants Chief Deputy Mays and Deputy Robinett, along with Deputy Murphy, each operating their own patrol vehicle.  Doc. [41] ¶¶ 2-4.  Throughout the 15-to-20-minute chase, O'Brien reached speeds exceeding 100 miles per hour and crossed the center line of the roadway, driving into oncoming traffic and causing vehicles to swerve onto the shoulder or off the roadway to avoid collision.  *Id.* ¶¶ 7, 8, 10.  In response to O'Brien's driving, an officer used a pursuit intervention

---

[1] The facts are drawn from Defendants' Statement of Uncontroverted Material Facts (SUMF).  *See* Doc. [41].  For purposes of the summary judgment motion, Defendants have accepted O'Brien's account of certain facts as true to avoid a genuine dispute, *id.* at 1 n.1, but they reserve the right to challenge those facts later at trial.  *Id.* (citing *Triple H Debris Removal, Inc. v. Companion Prop. & Cas. Ins. Co.*, 647 F.3d 780, 785 (8th Cir. 2011)); *see also* Fed. R. Civ. P. 56 2010 Advisory Committee Notes, Subdivision (g) ("The court must take care that [applying the summary-judgment standard to dispose of material facts not genuinely disputed] does not interfere with a party's ability to accept a fact for purposes of the motion only.").

Additionally, O'Brien did not file a response to Defendants' SUMF and therefore all well-supported facts therein are deemed admitted for purposes of this motion.  *See* Fed. R. Civ. P. 56(e); E.D. Mo. L.R. 4.01(E); *Jones v. United Parcel Serv., Inc.*, 461 F.3d 982, 991 (8th Cir. 2006).

[2] All references to Doc. [49-1] will use the page numbers assigned by the Court's electronic docketing system.

1

technique (PIT maneuver) to stop O'Brien's vehicle, causing O'Brien's vehicle to travel into ditch beside the roadway. *Id.* ¶ 9.

Once O'Brien's vehicle was brought to a halt, Deputy Robinett stopped, exited his patrol vehicle, and ran around the front of his patrol car to reach O'Brien's vehicle. *Id.* ¶¶ 11, 12. Upon reaching O'Brien's vehicle, Robinett saw what appeared to be Deputy Murphy struggling with O'Brien on the ground. *Id.* ¶ 13. The area was dark, and Robinett was unsure whether O'Brien was armed. *Id.* ¶¶ 14, 15. Concerned for Deputy Murphy's safety, Robinett assisted Murphy in subduing O'Brien. *Id.* ¶¶ 16, 18. Murphy, who was positioned around O'Brien's upper back and shoulders, managed to place his knee on the center of O'Brien's back and secure him with handcuffs. *Id.* ¶¶ 17, 19. O'Brien testified in his deposition that one or two seconds after being handcuffed, Robinett punched him the first time, and that Robinett punched O'Brien another two times, for a total of three punches within three seconds. *Id.* ¶¶ 20-21. O'Brien testified that one second later, Robinett placed his TASER X26P[3] conducted electric weapon (the "taser") against O'Brien's body and tased him twice. *Id.* ¶¶ 22-23. O'Brien further testified that after being tased, Deputy Robinett got up and walked away and Chief Deputy Mays (who, O'Brien testified, did not use any force against him at any time) helped O'Brien off the ground. *Id.* ¶¶ 24-26. O'Brien was placed in the passenger seat of Murphy's patrol vehicle. *Id.* ¶ 27.

Mays radioed the dispatcher to send a unit from the Ripley County Ambulance District to the scene of O'Brien's arrest.[4] *Id.* ¶ 28. Paramedics Alice Singleton and David Joiner arrived on scene in response to O'Brien's accident.[5] Docs. [41] ¶ 35; [49-3] at 3:1-3. Singleton observed that the vehicle O'Brien was driving appeared to have suffered minimal damage. Doc. [41] ¶ 36. A deputy, who Singleton believes was Mays, directed Singleton to O'Brien, who was sitting in the back of a patrol vehicle. *Id.* ¶¶ 38-39. At 9:45 p.m., Singleton contacted O'Brien, leaned into the patrol vehicle, and

---

[3] *See* Doc. [41] ¶ 68.

[4] Mays called in the unit because O'Brien's vehicle went into a ditch on the side of the roadway and Mays wanted to have O'Brien examined by a medical provider. *Id.* ¶ 28. According to Mays, it is standard practice at the Ripley County Sheriff's Department to dispatch an ambulance if a vehicle involved in a pursuit is struck by another vehicle during the pursuit or if a vehicle crashes. *Id.* ¶ 29.

[5] Singleton is a Missouri licensed EMT/paramedic and a registered nurse who has served with the Ripley County Ambulance District since 2007. Doc. [41] ¶¶ 32-33; [49-3] (Defs.' Suppl. to Singleton's Dep.) at 2:1. Joiner, also a licensed paramedic, is the Director of the Ripley County Ambulance District and has served in that position for fourteen years. *Id.* ¶¶ 30-31.

generally assessed him from head to toe.[6]  *Id.* ¶¶ 41-42.  Singleton testified that she did not observe any bruising or swelling around O'Brien's eye sockets and did not observe any facial deformity.  *Id.* ¶ 43.  She also testified that she did not observe any lacerations or injuries to O'Brien's face.  *Id.* ¶ 44.  Joiner likewise observed O'Brien and his professional medical assessment was that O'Brien was not injured.  *Id.* ¶¶ 46-47; *see also* Doc. [41-4] (Joiner Dep.) at 5:13-22.  Singleton also testified that O'Brien stated that he did not need any further medical treatment at that time.  *Id.* ¶ 49.  Singleton testified that no one at the accident scene asked or instructed her to refrain from transporting O'Brien to a medical facility, and that she believed he did not need to be transported to a medical facility.  *Id.* ¶¶ 48, 53-55.

Like Joiner and Singleton, Chief Deputy Mays also did not observe any cuts, open wounds, swelling, bruising, or any other sign of physical injury on O'Brien's body.  *Id.* ¶ 58.  Mays did not see or hear O'Brien wincing, crying, moaning, trembling, shaking, convulsing, or otherwise displaying audible or visible signs indicating that he was suffering injury and in need of medical treatment.  *Id.* ¶ 59.  After his arrest, O'Brien was transported to Wayne County Jail.  *Id.* ¶ 63.

O'Brien's Amended Complaint, filed November 9, 2020, alleges that Deputy Robinett violated his Fourth and Fourteenth Amendment rights to be free from excessive force when he punched O'Brien three times in the face and then tased him twice while he was handcuffed and lying face down on the ground.  Doc. [8] at 4-5.  It also alleges that Chief Deputy Mays violated O'Brien's Fourteenth Amendment right by denying him medical care after he was arrested.  *Id.* at 5.[7]  On November 19, 2021, Defendants moved for summary judgment on both claims.  Doc. [40].

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" when the presence or absence of that fact "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby,*

---

[6] Singleton testified that no one impeded or sought to prevent her from administering the medical examination.  *Id.* ¶ 52.

[7] The Court found that O'Brien's Complaint, filed July 14, 2020, failed to state viable claims and granted O'Brien leave to file an amended complaint.  Doc. [7] at 9.  Upon review of O'Brien's Amended Complaint under 28 U.S.C. § 1915, the Court dismissed Deputy Murphy as a party and dismissed the following claims:  (1) each of the official-capacity claims; (2) the excessive force claims based upon the PIT maneuver; and (3) the libel and slander claims.  Doc. [10] at 12.

*Inc.*, 477 U.S. 242, 248 (1986), and a dispute as to a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The movant is not required by the rules to support its motion with affidavits or other similar materials *negating* the opponent's claim." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp.*, 477 U.S. at 323).

If the movant has carried its burden, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Celotex Corp.*, 477 U.S. at 323). "A party asserting that a fact . . . is genuinely disputed must support the assertion by:  (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot product admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson*, 643 F.3d at 1042 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *see also Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (quoting *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1079 (8th Cir. 2008)) (The burden shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'"); *Binkley v. Entergy Operations, Inc.*, 602 F.3d 928, 931 (8th Cir. 2010) (quoting *Godfrey v. Pulitzer Pub. Co.*, 276 F.3d 405, 412 (8th Cir. 2002)) ("In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." (internal quotation marks omitted)). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]" Fed. R. Civ. P. 56(e)(2).

Summary judgment must be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "In ruling on a motion for summary judgment, the court must bear in mind the actual quantum

and quality of proof necessary to support liability under the applicable law." *Hartnagel*, 953 F.2d at 396 (citing *Anderson*, 477 U.S. at 254). "The court must assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Id.* (citing *Celotex*, 477 U.S. at 322).

## DISCUSSION

**I.      Deputy Robinett is entitled to summary judgment on O'Brien's Fourth Amendment excessive force claim.**

"The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers."[8] *Thompson v. City of Monticello*, 894 F.3d 993, 998 (8th Cir. 2018) (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1202 (8th Cir. 1999)). "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Id.* (quoting *Coker v. Ark. State Police*, 734 F.3d 838, 842 (8th Cir. 2013)). "The Fourth Amendment requires us to ask, based on the perspective of a reasonable officer on the scene, 'whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Id.* (quoting *Ellison v. Lesher*, 796 F.3d 910, 916 (8th Cir. 2015)). Applying this test, the relevant considerations include: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight." *Id.* (quoting *Burnikel v. Fong*, 886 F.3d 706, 710 (8th Cir. 2018)). Courts may consider whether "the situation is 'tense, uncertain, and rapidly evolving,' which would force an officer to make 'split-second judgments' about how much force is necessary." *Id.* (quoting *Coker*, 734 F.3d 842-43). In short, "[t]he operative question in excessive force cases is 'whether the totality of the circumstances justifie[s] a particular sort of . . . seizure." *Cnty. of Los Angeles, Calif. v. Mendez*, 137 S. Ct. 1539, 1547 (2017) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

---

[8] While excessive force claims might be brought under other constitutional provisions, O'Brien's claim against Deputy Robinett arises out of an arrest following a high-speed vehicular chase and therefore should be analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989) ("In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments[.]"); *see also Chambers v. Pennycook*, 641 F.3d 898, 905 (8th Cir. 2011) ("This court has ruled . . . that it is appropriate to use a Fourth Amendment framework to analyze excessive force claims arising out of incidents occurring shortly after arrest, apparently because those incidents still occur 'in [the] course of' a seizure of a free citizen.") (quoting *Moore v. Novak*, 146 F.3d 531, 535 (8th Cir. 1998)).

Deputy Robinett puts forth three arguments supporting summary judgment on O'Brien's excessive force claim. First, Deputy Robinett contends the uncontroverted facts show that Robinett did not use his taser against O'Brien. Doc. [42] at 16-19. Second, Robinett asserts that any claim based upon O'Brien's allegations that Robinett punched him in the face after being arrested fails because such a use of force was not unreasonable. *Id.* at 19-22. Finally, Robinett argues that O'Brien's claims are barred by qualified immunity. *Id.* at 22, 27-29.

### A. There is no genuine dispute of material fact that Deputy Robinett did not tase O'Brien.

Robinett argues that summary judgment on O'Brien's excessive force claim is proper insofar as it is based upon Robinett's alleged use of his taser, as it is an uncontroverted fact that Robinett did not discharge the device on March 22, 2020. *Id.* at 16. In support of this position, Robinett testified that in 2018, the Ripley County Sheriff's Department issued him a TASER X26P, featuring serial number: X12009A38, which he carried in a holster on his duty belt during the events of March 22, 2020. Doc. [41] ¶¶ 68-70. After O'Brien's arrest, Mays received the taser from Robinett, packaged the device, and sent it Bryan Chiles at Axon Investigations.[9] *Id.* ¶¶ 80-81. Chiles, the Senior Investigations Engineer for Axon Enterprises, manages the investigations department and performs forensic analysis on TASER devices.[10] *Id.* ¶¶ 71-73. Chiles received Robinett's taser and generated a PDF event log from the taser's microchip which revealed that the taser was neither used nor armed at any moment on March 22, 2020.[11] *Id.* ¶¶ 82-83, 85. Specifically, the event log disclosed that the taser was placed in safe mode on March 18, 2020, at 16:51:06 and was not armed again until March 25, 2020. *Id.* ¶¶ 91-92, 95-97; *see also* Doc. [41-8] at 19.

Robinett argues that this fact is uncontroverted despite the fact that O'Brien testified that Robinett tased him twice. Doc. [41] ¶¶ 22-24. In support of his position, Deputy Robinett relies upon

---

[9] The Uncontroverted Statement of Material Facts recounts that Mays secured the taser in a box and sent it via UPS to "Axon Investigations, C/O Bryan Chiles." *Id.* ¶ 81. The same also states that Chiles works at "Axon Enterprises." *Id.* ¶¶ 73-74. To the extent that these statements generate an inconsistency, the inconsistency is immaterial for purposes of summary judgment.

[10] Each TASER device contains a memory chip that records and stores data regarding the taser's use. *Id.* ¶ 75. The data can be retrieved by using Axon's download software and remains otherwise inaccessible. *Id.* ¶¶ 76-77.

[11] The Term "Armed" means that the taser's safety was placed in the armed position. *Id.* ¶ 87. The event log's use of the term "Trigger" means that the taser was armed and the trigger was pulled. *Id.* ¶ 88. The term "Safe" means that the taser's safety was placed in the powered off position. *Id.* ¶ 89. The taser cannot be used to conduct a pulse when it is in safe mode. *Id.* ¶ 98.

6

*McManemy v. Tierney*, 970 F.3d 1034, 1038-39 (8th Cir. 2020), *cert. denied*, 142 S. Ct. 53 (2021). Doc. [42] at 16-19. In *McManemy*, the Eighth Circuit considered whether to credit a plaintiff's sworn testimony that he was tased as sufficient to generate a genuine dispute of material fact preventing summary judgment. *McManemy*, 970 F.3d at 1038. The Court noted that "in many qualified-immunity cases, the parties have 'two stories' about what happened." *Id.* (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). There, the plaintiff claimed that the deputy "'sadistically' tased him in drive-stun mode, once before handcuffing him and two-to-four times afterward." *Id.* The deputy challenged plaintiff's story by providing evidence in the form of TASER logs which showed that he did not discharge his taser as many times as the plaintiff claimed. *Id.* The Eighth Circuit held that *McManemy* was one of those cases where "the record 'so blatantly contradict[ed]' the plaintiff's account that 'no reasonable jury could believe it,'" because "the log on [the deputy's taser] revealed that it had only been discharged twice—each for three seconds, fifteen seconds apart," and plaintiff had made no attempt to challenge the log's accuracy. *Id.* (internal citations omitted). Robinett argues that the logic of *McManemy* applies here.

The Court agrees. Because O'Brien's testimony that he was tased is "blatantly contradict[ed]" by the TASER event log and Chiles's testimony regarding the same, the Court need not adopt O'Brien's version of the facts when deciding whether Robinett is entitled to summary judgment. *See McManemy*, 970 F.3d at 1038. O'Brien has made no attempt to undermine the accuracy of the event log or provide any other evidence that he was tased. Thus, his assertion that he was tased is not entitled to serious weight. *Id.*; *see also Moore v. Gwinnett Cnty.*, 805 F. App'x 802, 809 (11th Cir. 2020) (noting that the court "might have been obligated to accept [plaintiff's] version of the story where only the officers' testimony stood in opposition, [the court] need not do so where, as here, hard evidence [of the TASER event log] contradicts her testimony.") (citing *Singletary v. Vargas*, 804 F.3d 1174, 1183 (11th Cir. 2015) (quoting *Scott*, 550 U.S. at 380)).

**B. O'Brien has failed to show that his claimed Fourth Amendment right was clearly established for purposes of qualified immunity.**

In addition to being tased, O'Brien claims that Robinett violated his Fourth Amendment rights when he punched him in the face three times in the one to two seconds after being handcuffed. Doc. [8] at 4. While Robinett denies punching O'Brien, Robinett contends that even if he did punch O'Brien, his actions were objectively reasonable under the totality of the circumstances. Doc. [42] at 20-22. In addition, Robinett claims that he is protected by qualified immunity. *Id.* at 27-29.

7

"Qualified immunity shields government officials from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would know." *Ferguson v. Short*, 840 F.3d 508, 510 (8th Cir. 2016). The Court need not decide whether a genuine factual dispute exists which might, if decided in O'Brien's favor, establish a cognizable Fourth Amendment violation because O'Brien makes no attempt to surmount the second prong of the qualified immunity inquiry. *Ashcoft v. al-Kidd*, 563 U.S. 731, 735 (2011) ("[L]ower courts have discretion to decide which of the two prongs of qualified immunity analysis to tackle first.") (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

"A right is clearly established when that right is so clear that a reasonable official would understand that what he is doing violates that right." *Craighead v. Lee*, 399 F.3d 954, 962 (8th Cir. 2005) (citation omitted). The right at issue cannot be framed at a high level of generality but must be considered under conditions comparable to the factual situation presented. *L.G. through M.G. v. Columbia Pub. Schs.*, 990 F.3d 1145, 1148 (8th Cir. 2021) ("The right must be described with a 'high degree of specificity' to take into account the particular circumstances that the officer faced.") (quoting *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)). "Such specificity is especially important in the Fourth Amendment context, where the [Supreme] Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001) *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)); *see also Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) ("Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue.") (quoting *Mullenix*, 577 U.S. at 13).

The plaintiff bears the burden to show that the right was clearly established, *Monroe v. Ark. State. Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (citing *Sparr v. Ward*, 306 F.3d 589, 593 (8th Cir. 2002)), and may meet that burden in three ways: (1) identifying "existing circuit precedent involving sufficiently similar facts that squarely governs the situation"; (2) pointing to "'a robust consensus of cases of persuasive authority' establishing that the facts of [plaintiff's] case make out a violation of a clearly established right"; or (3) showing that "a general constitutional rule applies with 'obvious clarity' to the facts at issue[.]" *Hovick v. Patterson*, 37 F.4th 511, 517 (8th Cir. 2022 (quoting *Boudoin v. Harsson*, 962 F.3d 1034, 1040 (8th Cir. 2020)).

8

O'Brien has not provided any Eighth Circuit precedent, a "consensus of cases of persuasive authority," or otherwise shown that Robinett's actions violated with "obvious clarity" the Fourth Amendment's proscription against the use of excessive force. *See* Docs. [43], [48]. For this reason, Officer Robinett is entitled to qualified immunity on O'Brien's Fourth Amendment claim.

II.     **Chief Deputy Mays is entitled to summary judgment on O'Brien's failure to provide adequate medical care claim.**

The Due Process Clause of the Fourteenth Amendment guarantees arrestees and pretrial detainees the right to receive adequate medical care. *See Dadd v. Anoka Cnty.*, 827 F.3d 749, 756 (8th Cir. 2016) ("It is clear that a pretrial detainee has a constitutional right to medical care while in custody.") (citing *West v. Atkins*, 487 U.S. 42, 55 (1988)); *see also Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014) ("As a pretrial detainee, Tucker's right to medical care arises under the Due Process Clause of the Fourteenth Amendment.") (citing *Vaughn v. Greene Cnty.*, 438 F.3d 845, 850 (8th Cir. 2006)). Failure to provide adequate medical care claims are evaluated under the Eighth Amendment deliberate indifference framework. *Jackson*, 756 F.3d at 1065 ("Although Tucker's claim is rooted in the Fourteenth Amendment, we apply the deliberate-indifference standard that governs claims brought by convicted inmates under the Eighth Amendment.") (citing *Vaughn*, 438 F.3d at 850). To prove a deliberate indifference claim, a plaintiff must prove two elements—one objective, the other subjective. *See Blair v. Bowersox*, 929 F.3d 981, 987 (8th Cir. 2019).

To satisfy the objective prong, a plaintiff must show that "he suffered from an objectively serious medical need." *Jackson*, 756 F.3d at 1065 (citing *Scott v. Benson*, 742 F.3d 335, 340 (8th Cir. 2014)). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)). "A medical need that would be obvious to a layperson makes verifying medical evidence unnecessary." *Id.* (citing *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004)).

For the subjective prong, a plaintiff must demonstrate that the defendant "actually knew of but deliberately disregarded his serious medical need." *Jackson*, 756 F.3d at 1065 (quoting *Scott*, 742 F.3d at 340). "This showing requires a mental state 'akin to criminal recklessness.'" *Id.* (quoting *Scott*, 742 F.3d at 340). "Deliberate indifference is 'more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Fourte v. Faulkner Cnty., Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)).

9

Chief Deputy Mays argues that O'Brien's failure to provide medical care claim fails for four reasons:  (1) O'Brien did not suffer an objectively serious medical need; (2) Chief Deputy Mays was not deliberately indifferent to any serious medical need; (3) Chief Deputy Mays did not cause either a denial or delay of O'Brien's medical care; and (4) O'Brien's claim against Chief Deputy Mays is barred by qualified immunity.  Doc. [42] at 6, 10, 12, 22.

Chief Deputy Mays testified about his observations of O'Brien at the scene, stating that he "did not observe any cuts, open wounds, swelling, bruising, or any other sign of physical injury" on O'Brien's body.  Doc. [41] ¶ 58 (citing Doc. [41-2] ¶ 22).  Mays further testified that he "did not see or hear [O'Brien] wincing, crying, moaning, trembling, shaking, convulsing," or "displaying any other audible sign that indicated to [him] that [O'Brien] was injured" or in need of medical treatment.  *Id.* ¶ 59 (citing Doc. [41-2] ¶ 22).  Paramedic Singleton corroborated Chief Deputy Mays's observations, testifying that O'Brien did not have any swelling around his eye sockets or any other facial deformities.  *Id.* ¶ 43 (citing Doc. [41-5] at 10:8-20).  Singleton also noted that O'Brien had no lacerations or injuries on his face.  *Id.* ¶ 44 (citing Doc. [41-5] at 9:12-15).  Singleton further testified that she did not believe that O'Brien needed to be transported to a medical facility.  *Id.* ¶ 48 (citing Doc. [41-5] at 12:17-13:7).  Paramedic Joiner, who also observed O'Brien at the scene of the accident, testified that it was his opinion that "[O'Brien] was not injured," or that O'Brien was afflicted with "no physical injuries that [he] could see."  Doc. [41-4] at 5:9-22.

Defendant Mays thus satisfied his initial burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact" as to whether O'Brien was suffering from an objectively serious medical need.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  It falls to O'Brien, therefore, to "respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'"  *Torgerson*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Celotex Corp.*, 477 U.S. at 323).

O'Brien fails to carry that burden.  He offers no evidence that he suffered a medical condition that had "been 'diagnosed by a physician as requiring treatment' or [was] 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'"  *Jackson*, 756 F.3d at 1065 (quoting *Scott*, 742 F.3d at 340).  He protests the claim that he refused medical treatment, attaching a refusal-of-medical-treatment form to his opposition and pointing to the absence of his signature.  *See* Doc. [48] at 2-4.  But that form does not controvert any of the evidence that he was not suffering from an objectively serious medical need.  Defendant similarly fails to create a genuine dispute over

10

whether Chief Deputy Mays was subjectively aware of O'Brien's purported serious medical need and whether Mays deliberately disregarded that need. *Fourte*, 746 F.3d at 387 (citing *Jolly*, 205 F.3d at 1096). Instead, O'Brien argues that the Defendants "only put what they wanted to be seen in support of their motion," as opposed to providing "all the facts," Doc. [43] ¶ 3.a, and that he was unable to attend the witness depositions because he was incarcerated. *Id.* ¶ 3.b; *see also* Doc. [48] ¶ 2.ii.

While the inability to attend depositions and cross-examine witnesses may inhibit a *pro se* inmate's ability to prosecute his case, prisoners do not have a constitutional right to attend depositions taken in their civil actions. *See In re Wilkinson*, 137 F.3d 911, 914 (6th Cir. 1998) ("We begin with the fundamental rule that an incarcerated plaintiff has no constitutional right to attend the depositions taken in his civil action.") (citing *In re Collins*, 73 F.3d 614, 615 (6th Cir. 1995)); *see also Holt v. Pitts*, 619 F.2d 558, 560 (6th Cir. 1980) ("Generally speaking, prisoners who bring civil actions, including prisoners who bring actions under the civil rights statute, 42 U.S.C. § 1983, have no right to be personally present at any stage of the judicial proceedings."). That inability also does not excuse O'Brien from his burden to present sufficient admissible evidence to raise a genuine dispute of material fact to avoid summary judgment. *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."); E.D. Mo. L.R. 4.01(E) (every summary judgment opposition memorandum must be accompanied by a "Response to Statement of Material Facts" wherein the opponent controverts movant's asserted facts by giving "specific citation(s) to the record[.]"); *see also Headrick v. Waate*, 2020 WL 7041812, at *1 (E.D. Mo. Nov. 30, 2020) (deeming as admitted the supported factual assertions in defendant's uncontroverted statement of material facts because the *pro se* plaintiff failed to controvert the same).

As Chief Deputy Mays has presented sufficient evidence to carry his initial burden and show that he is entitled to judgment as a matter of law, and O'Brien has failed to demonstrate a genuine factual dispute, Mays is entitled summary judgment on O'Brien's Fourteenth Amendment deliberate indifference claim.[12]

---

[12] Because Plaintiff has failed to show that Mays violated his federally protected rights, Plaintiff also fails on the first prong of Mays's qualified immunity defense. *See Handt v. Lynch*, 681 F.3d 939, 943 (8th Cir. 2012) ("To overcome the defense of qualified immunity, a plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrates the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.") (quoting *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009)); *see also Parrish v. Dingman*, 912 F.3d 464, 468 (8th Cir. 2019) (because plaintiff failed to adduce facts generating a dispute over whether defendant's use of force was unreasonable, defendant was entitled to qualified immunity on plaintiff's excessive force claim).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, Doc. [40], is **GRANTED**.  A separate order of judgment shall be issued herewith.

Dated this 30th day of September, 2022.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE